## Coalition for Better Transportation in the City v. Southeastern Pennsylvania Transportation Authority

Before Cavanaugh, Williams and Rosenwald, *JJ.*

*John Matrullo, Peter J. Pinnola, Andrew F. Erba* and *Angel Louis Ortiz*, for plaintiffs.

*Louis H. Van Dusen, Jr., Henry S. Hilles, Jr.* and *P. Alan Bulliner*, for defendants.

CAVANAUGH, *J.*, December 22, 1977—

## HISTORY

This action was instituted by plaintiffs to enjoin the implementation of a fare increase by the Southeastern Pennsylvania Transportation Authority (SEPTA). As an aid to understanding the history of this suit, the pertinent events are listed in chronological order:

| DATE | DESCRIPTION |
| --- | --- |
| April 1, 1976 | Tariffs for fare increases of $.15 filed followed by publication and posting of said tariffs. |
| April 2, 1976 | Nathan L. Posner, Esq., named hearing examiner to conduct hearings relative to the proposed fare increases. |
| April 12, 1976 | Public hearings held. |
| April 21, 1976 | Hearing examiner submitted his report and recommendation of approval of the proposed fare increases. |
| April 28, 1976 | Special meeting of the board of SEPTA was held and the proposed fare increases were approved. This fare increase was vetoed by the exercise of the City of Philadelphia's veto power. |
| May 8, 1977 | Strike against SEPTA by its employes ended. |
| May 9, 1977 | Notice of a special board meeting of SEPTA, to be held on May 11, 1977. |
| May 11, 1977 | SEPTA board approved fare increases of $.10 effective May 15, 1977. At this time the representatives of the City of Philadelphia did not exercise their veto power. |
| May 13, 1977 | A temporary ex parte order was signed by Judge Cavanaugh temporarily enjoining and restraining the fare increases adopted by the May 11, 1977, SEPTA board meeting. |

| | |
|---|---|
| May 16, 1977 | A hearing was held before Judge Cavanaugh whereat arguments, briefs and evidence were received. At the conclusion of that hearing Judge Cavanaugh vacated his order of May 13, 1977, dismissed the petition and allowed the fare increase to take effect. |
| Oct. 20, 1977 | A court en banc, consisting of Judges James R. Cavanaugh, Edward Rosenwald and Robert W. Williams, Jr., sat to consider plaintiffs' exceptions to Judge Cavanaugh's order of May 16, 1977. |

The fundamental position of plaintiffs is that the SEPTA board could not legally approve a fare increase without conducting a second public hearing as the April 12, 1976, public hearing was either "stale" or legally defective with respect to the May 11, 1977, adoption of a fare increase by SEPTA. Plaintiffs' arguments against the implementation of the SEPTA fare increases are fourfold. First, plaintiffs argue that SEPTA was required to hold a public hearing prior to SEPTA's May 11, 1977, adoption of fare increases because the tariffs of April 1, 1976, had expired and hence the public hearings of April 12, 1976, failed to satisfy the requirements of the Metropolitan Transportation Authorities Act of August 14, 1963, P.L. 984, as amended, 66 P.S. §2004(d)(9), and SEPTA's Rules and Regulations for Procedures to be Followed in Determining the Rates to be Charged therefor: 1 Pa. Bulletin 47 §§2.01 and 2.02 (1970). Secondly, plaintiffs assert that SEPTA's approval of the rate increases at the May 11, 1977, "special" meeting was ultra vires without a new tariff and hearings. Next, plaintiffs argue that Judge Cavanaugh erred in his order of May 16, 1977, when he "attempted to

bridge the gap between the mandatory hearing requirement of 66 P.S. §2004(d)(9) and the board's position that it could resurrect an expired tariff, by adopting a 'changed circumstances' test." Post-trial brief in support of plaintiffs' exceptions at 14. This argument may be dismissed summarily as plaintiffs have misconstrued Judge Cavanaugh's ruling of May 16, 1977. This court finds that Judge Cavanaugh's order of May 16, 1977, was not based upon a "changed circumstances" test but upon an interpretation of 66 P.S. §2001 and the SEPTA Regulations §§2.01 and 2.02. It is also ironic that it was plaintiffs themselves who first insisted upon introducing evidence and argument concerning changed circumstances at the May 16, 1977, hearing. See transcript at 48. Lastly, plaintiffs argue that they have a constitutionally protected right to a hearing prior to a rate increase. This last argument need not be reached in light of the disposition of the first two issues below.

## DISCUSSION

Plaintiffs' arguments revolve around the question of whether the April 12, 1976, public hearings satisfy the requirements of SEPTA's Regulations §§2.01 and 2.02, which regulations interpret 66 P.S. §2004(d)(9).[1] In pertinent part 66 P.S. §2004(d)(9) reads: "The authority shall determine by itself exclusively, after appropriate public hearing, the facilities to be operated by it, the services to be available to the public, and the rates to be charged therefor." The SEPTA regulations involved in this dispute provide:

---

1. The authority of SEPTA to make regulations arises from 66 P.S. §2004(d)(7).

"Prior to the determination by the Authority of the facilities and services to be made available by it and the rates to be charged therefor, and prior to any charge therein, the General Manager shall prepare and submit to the Board of the Authority a tariff and service schedule (hereinafter called the 'tariff') showing the services proposed to be provided by the Authority and the rates or other compensation proposed to be charged for such services. All such tariffs shall set forth the date on which the proposed rates or services are to become effective, which date shall not be less than 20 days after the date on which the tariff is filed, unless such effective date is otherwise advanced or delayed by the Board." SEPTA Regulation §2.01

"Prior to the adoption by the Board of any tariff or tariffs providing for fares or services applicable to the entire transit system or a substantial part of the transit system operated by the Authority, notice of such tariffs shall be given to the public by advertisement in a newspaper of general circulation published or distributed in each county of the Metropolitan Area and in the City of Philadelphia and by posting in offices, waiting rooms, stations and vehicles operated by the Authority a notice of a public hearing to be held with respect to the proposed tariff. A copy of such notice shall also be sent to appropriate news media in the Metropolitan Area. The notice, which shall be advertised and posted at least ten (10) days prior to the hearing date, shall state substantially as follows:

"NOTICE: New fares (or services) to become effective _____making (increases/decreases) in fares (or services) have been proposed by SEPTA and posted in the general offices of SEPTA and will be produced for examination upon

request. A public hearing with respect to the adoption of such fares (or services) shall be held on _____ at _____." SEPTA Regulation §2.02(a).

There is no dispute concerning the validity of the April 12, 1976, public hearing with regards to the April 28, 1976, SEPTA board approval of fare increases. Tariffs for fare increases were filed and published. A hearing examiner was named and public hearings were conducted. The hearing examiner submitted his report and recommended the approval of the proposed fare increases. The question presented is the effect of the. City of Philadelphia's veto of the adopted fare increases. Plaintiffs contend, for various reasons, that SEPTA must hold additional public hearings before another fare increase may be adopted by SEPTA. (Transcript of May 16, 1977 at 19-20.)

Plaintiffs' first argument for the requiring of a second public hearing is based upon the provision in 66 P.S. §2004(d)(9) that: " . . . The authority shall determine by itself exclusively, after appropriate public hearing . . . the rates to be charged."

SEPTA Regulation §2.02 requires that prior to the adoption of any fare increases by the board, SEPTA must give the public notice of the tariffs filed in requirement with SEPTA Regulation §2.01. Plaintiffs contend that the Rate Tariff No. 1, Supplement No. 11, which was filed on April 1, 1976, expired on May 2, 1976, after the city vetoed the adopted fare increases. Plaintiffs reason that because SEPTA Regulation §2.01 allows for the advance or delay of the effective date of a rate tariff, Rate Tariff No. 1, Supplement No. 11, expired when its effective date was not advanced. The problem with plaintiffs' argument is that Tariff No. 1, Supplement No. 11,

states that its effective date was "on or after May 2, 1976." In light of this wording there is no need for SEPTA to amend its tariff. The SEPTA board resolution of April 28, 1976, contained a specific effective date of May 2, 1976. The city's veto of that resolution does not cause the tariff to "expire."

Plaintiffs next assert that SEPTA's approval of a rate increase at a special meeting without a new tariff and hearings violated 66 P.S. §§2001 and 2018. We have already stated that a new tariff was not required, and it follows that there is no new hearing required. Additionally, plaintiffs assert that the board overrode the city's veto of April 28, 1976, at a special meeting of May 11, 1977, and that this was ultra vires, citing 66 P.S. §2018. " . . . That no action by the board to which an express objection has been made . . . by a board member . . . representing [Philadelphia County] . . . shall be carried unless supported at a subsequent regular meeting . . . by the votes of at least three-quarters of the members of the board." 66 P.S. §2018.

It is undisputed that the board unanimously adopted the fare increases at the May 11, 1977, special meeting. The problem with plaintiffs' position is that this court does not view this unanimous adoption as an override of the city's veto. Our understanding of the May 11, 1977, meeting is that another resolution was presented and the city simply did not exercise its veto power. Thus the actions of SEPTA's board were not ultra vires.

Plaintiffs also argued that it is inequitable to allow SEPTA to adopt a fare increase 13 months after the public hearing was held (Transcript of May 16, 1977 at 52). The answer to this position is that this court must decide cases upon the facts

presented to it and the applicable law.[2] The facts present the following situation. SEPTA proposes a fare increase and follows all required steps in the furtherance of seeking that fare increase. A tariff was filed and published and a hearing examiner was appointed. Public hearings were held by the hearing examiner and a report was filed which recommends the adoption of a fare increase. A fare increase was adopted and was vetoed by the city. A period of time passes in which there is continual discussion of the original tariff and the possibility of a fare increase.[3] SEPTA is shut down by a strike of its employes for 45 days till May 8, 1977. On May 11, 1977, SEPTA's board conducted a special meeting and concluded that the need for a fare increase still existed. Tariff No. 1, Supplement No. 11, was amended to a $.10 fare increase and adopted unanimously by the board.

The law mandates that SEPTA maintain a balanced budget: Metropolitan Transportation Au-

2. A delay in the implementation of a fare increase can be the result of numerous factors. In the case of Philadelphia v. SEPTA, 441 Pa. 518, 272 A. 2d 921 (1971), a public hearing on the issue of a fare increase was held on August 18, 1970, but actual implementation of the fare hike was delayed by appeals to the Commonwealth and Supreme Courts of Pennsylvania until January 25, 1971.

3. A review of the SEPTA board meeting minutes reveals that budgetary issues were discussed at the following meetings: May 26, 1976; June 4, 1976; June 23, 1976; July 28, 1976; September 22, 1976; December 15, 1976 and February 23, 1977. Specific fare increases were discussed in the July 28 and November 24 meetings in 1976. It was specifically noted at the February 23, 1977, meeting that SEPTA would run out of money in May of 1977, assuming that funds would be received as expected from all sources.

thorities Act of 1963, 66 P.S. §2004(d)(9)(.1). At oral argument before this court, plaintiffs contend that they had alternatives to a fare increase to present to SEPTA at a public hearing. SEPTA contends that all alternatives were considered and that there was continuing dialogue with respect to a fare increase in the 13-month interval. By statute, plaintiffs are limited in the grounds upon which they may bring suit.

"Any person aggrieved by any rate or service or change of service fixed by the authority may bring an appeal against the authority in the court of common pleas of any county in the metropolitan area in which the charge, service or change of service shall be applicable, for the purpose of protesting against any such charge, service or change of service: Provided, however, That the grounds for such suits shall be restricted to a manifest and flagrant abuse of discretion or an error of law; otherwise, all such actions by the authority shall be final." 66 P.S. §2004(d)(9).

This court finds no error of law committed by SEPTA. There is no charge of, nor do we find any evidence of manifest and flagrant abuse of discretion.

With respect to the meaning of "manifest and flagrant abuse of discretion" this court is bound by the case of Philadelphia v. SEPTA, 441 Pa. 518, 521:

"[T]he scope of our review of discretionary action by a state commission, agency or authority such as SEPTA is most narrow.

"'In our role as a reviewing court, we must enter upon the performance of our judicial function ever mindful of the deference we should show to the

Commission's determinations. It is possible that if this Court had been called upon to carry out this important task, we might have chosen different[ly] . . . , perhaps because we might have placed more emphasis on certain factors which the Commission did not consider especially important. *But* . . . this does not in any way cast doubt upon the determination made by the Commission. Because it was not this Court, but the Commission which has been charged with this responsibility. *Our* scope of review is severely limited; what we must find in order to overturn . : . [the Commission's action] is a clear abuse of discretion.' " Quoting Man O'War Racing Association v. State Horse Racing Commission, 433 Pa. 432, 250 A. 2d 172 (1969).

The Supreme Court of Pennsylvania has reaffirmed this position in Flaherty v. Allegheny Port Authority, 450 Pa. 509, 516-517, 299 A. 2d 613 (1973);

"Judicial interference with the actions of municipal authorities should not be undertaken in the absence of proof of an abuse of power, bad faith, fraud or arbitrary and capricious action; the courts should be loathe to review the details of the effectuation of actions of municipal authorities. . . . Where complex questions of technology and finance are resolved by administrative decision, judicial review should be particularly restrictive."

The case of Philadelphia v. SEPTA, supra, is also relevant on its facts. In that case the city appealed the SEPTA board override of a city veto of a fare increase. The city alleged that the fare increases were based upon an error of law and constituted a manifest and flagrant abuse of discretion; that

SEPTA did not consider alternatives to a fare increase; that SEPTA utterly failed to cooperate with the city; and that the proposed fare increase is inequitable and discriminatory. This court finds the case of Philadelphia v. SEPTA, supra, to be sufficiently analogous to the case at hand to control our decision. Upon finding that SEPTA committed no error of law or manifest and flagrant abuse of discretion, this court declines to look any further into the determination by the SEPTA board. On the facts of the case at hand, this court holds that the passage of 13 months between the holding of a public hearing and the adoption of a fare increase is not too great, upon a close examination of the facts presented here, as to render said public hearing invalid for the purposes of the SEPTA Regulations and the Metropolitan Transportation Authorities Act.

Finally, plaintiffs contend that they have a constitutionally protected right to a hearing prior to a fare increase and that the April 12, 1976, public hearing does not satisfy that due process right. This court recognizes the extent to which the United States Supreme Court has extended the safeguards of due process. In Goss v. Lopez, 419 U.S. 565, 572 (1975), the Supreme Court stated: "Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizens to certain benefits."

We have already stated above that this court finds the SEPTA board to be in full compliance with both the Metropolitan Transportation Authorities Act and the SEPTA Regulations. The April 12, 1976,

public hearings were in full compliance with the applicable statutes and regulations. That meeting satisfied all elements of due process for the SEPTA board meeting of April 28, 1976. This court also finds that the April 12, 1976, hearings satisfy all due process requirements for the May 11, 1977, SEPTA board meeting. The 13-month delay here does not violate due process in light of the surrounding circumstances (city's veto, continuing cash problems and board discussions and employes' strike). Thus, under the facts of this case, the requirements of due process have been met. Plaintiffs' reliance upon the cases of Virgin Islands Hotel Association v. Virgin Islands Water & Power Authority, 54 F.R.D. 377 (D.C.V.I. 1972), aff'd 465 F. 2d 1272 (3d Cir. 1972), and Action Alliance et al. v. Phila. Gas Commission, Court of Common Pleas, Philadelphia County, May term 1977, no. 5087 (unpublished opinion, July 14, 1977) is misplaced. Those cases involved statutes fundamentally different in their phrasing and goals. The rights created under the statutes in the Virgin Islands and Action Alliance cases are completely different from those rights, in terms of the nature of the rights, presented in this case. This court finds that all the requirements of due process have been satisfied here.

## ORDER

And now, December 22, 1977, upon consideration of plaintiffs' exceptions to Judge Cavanaugh's order of May 16, 1977, the answer thereto, the briefs submitted thereon and oral argument, it is hereby ordered and decreed that plaintiffs' exceptions are denied.